IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) Case No. 09-20133-JWL
)
GLADSTONE MCDOWELL, et al., )
)
Defendants. )
)
_____)

## MEMORANDUM AND ORDER

The matter is presently before the Court on motions by defendants Gladstone McDowell (Doc. ## 351, 440) and Michael Francois (a/k/a Curtis Pitter) (Doc. # 361) to suppress evidence obtained from certain wiretaps. Defendants Samora McIntosh (in Doc. # 363) and Radell Bradford (in Doc. #477) have also joined in these motions to suppress. The Court heard argument on these motions at a hearing on October 19, 2010, and the motions are set for an evidentiary hearing on January 31, 2011. This Order addresses the scope of that evidentiary hearing, and specifically whether defendants are entitled to an evidentiary hearing under *Franks v. Delaware* concerning whether the applications for the wiretap orders contained material misrepresentations or omissions. For the reasons set forth below, the Court concludes that defendants have not made a substantial showing to warrant a *Franks* hearing; accordingly, the motions to suppress are denied as they relate to misrepresentations or omissions.

Defendants contend that the wiretap evidence should be suppressed because the applicants for the wiretap violated Title III's requirement of "a full and complete statement" regarding necessity by making misleading or false statements or omissions in their affidavits. *See* 18 U.S.C. § 2518(1)(c). The Court ruled at the October 19 hearing that, although defendants assert a statutory violation separate from any possible Fourth Amendment violation, the issue is governed by the analysis set forth by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). The Tenth Circuit has described that analysis as follows:

> Under *Franks*, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. If the defendant establishes at the evidentiary hearing by a preponderance of the evidence that the false statement was included in the affidavit by the affiant "knowingly and intentionally, or with reckless disregard for the truth," and the false statement was "necessary to the finding of probable cause," then the Supreme Court has ruled that the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. In addition, we have ruled that the standards of "deliberate falsehood" and "reckless disregard" set forth in *Franks* apply to material omissions, as well as affirmative falsehoods.

*United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citations and internal quotations omitted); *see also United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004) (in attempting to make substantial showing to warrant a *Franks* hearing, "[a]llegations of negligence or innocent mistake are insufficient"). Thus, before an evidentiary hearing may be granted, defendants bear the burden of making a substantial

2

showing that (1) the application contained misrepresentations or omissions; (2) that they were made intentionally or recklessly; and (3) that they were material, that is, that the warrant would not have issued in their absence.

As a preliminary matter, the Court notes that defendants have failed to submit any affidavits (other than the application affidavits) or other documentary evidence to support their argument that the affidavits contained material omissions, instead asking the Court to accept their explanation of the relevant evidence obtained in discovery. The Court could deny defendants a *Franks* hearing solely based on that failure. *See Artez*, 389 F.3d at 1116 (allegations in support of a *Franks* hearing "must be accompanied by an offer of proof," and "[a]ffidavits of witnesses should be provided to the court or their absence satisfactorily explained"). Even if defendants' arguments were properly supported by affidavits or other evidence, however, the Court would still conclude that defendants' have not made a sufficient showing to warrant a *Franks* hearing, for the following reasons.

1. Defendants cite five omissions from the affidavits. First, defendants argue that the affidavits should have included the results of the execution of eight warrants on e-mail accounts. The Court denies suppression based on that omission. Defendants have not stated (or provided evidence of) what those results were; thus, defendants have not identified the omitted information, and the Court cannot determine whether any omission was material. Moreover, the affidavits did include information that the members of the target drug-trafficking organization were technologically savvy, and there is no basis to

3

conclude that the use of the e-mail warrants provided information concerning the organization's scope, membership, sources, suppliers, customers, and so on, such that the wiretaps were rendered unnecessary. Finally, there is no basis to conclude that this omission was made intentionally or recklessly.

2.     Defendants next take issue with the statement in the affidavits that confidential sources could not be used to obtain the desired information. Defendants argue that this portion of the affidavits omitted any reference to a confidential source designated CS1. Defendants also argue that the affidavits are at least misleading because CS1 had indicated to authorities (as noted elsewhere in the affidavits) that he could be connected to a drug source for the organization.

The Court rejects these arguments. Most significantly, there was no omission here, as the affidavits did include information concerning CS1 and his statements to authorities. Defendants may disagree with the conclusions that CS1 could not be used to infiltrate the drug-trafficking organization and that wiretaps were therefore necessary, but that disagreement does not raise an issue of misrepresentation or omission. In addition, the information in the affidavits did not indicate that CS1 could be sufficiently connected to a source; rather, CS1 told authorities that a member of the organization had stated that he could set up an account for CS1 with a source so that CS1 could get direct shipments of marijuana in the mail. That information does not suggest that CS1 would

have had access to that source.[1] Furthermore, the affidavits explained specifically why it would have been difficult to find a confidential source to infiltrate this organization that included many members of the same families. Thus, defendants have not shown that CS1 could in fact have been used to gain enough information to make the wiretaps unnecessary. Finally, in light of the fact that the affidavits did include information concerning CS1, there is no basis to find the requisite intent with respect to this alleged omission.

3.  Defendants also find fault with the portion of the affidavits relating to the inability to use an undercover agent to infiltrate the target organization. Defendants argue that, in light of the existence of CS1, the affidavits were misleading in stating that there was no confidential source to introduce an undercover agent into the organization. The Court rejects this argument for the same reasons stated above with respect to the references to CS1 in the affidavits.

Defendants also point to the omission from the affidavits of information that Mr. McDowell himself had purchased narcotics from an undercover agent in 1995, and they argue that such information is relevant to the determination of whether an undercover agent could have been used to infiltrate the organization, thereby making wiretaps of Mr. McDowell's telephone unnecessary. The 1995 incident occurred many years ago,

---

[1] In its brief, the Government states that CS1 could not be used effectively because he had recently been arrested and was under indictment, which would make it unlikely that he would be trusted by the organization with sensitive information; the Government has not cited to any evidence of that fact, however.

5

however, and defendants have not provided any information to show that the circumstances were similar then, and the affidavits set forth specific reasons why the use of undercover agents would not have been effective here. Thus, defendants have not made a substantial showing that the omission of information about the undercover sale to Mr. McDowell in 1995 was material, such that the wiretap orders would not have been issued in the face of such information. Moreover, given the lack of any apparent connection between the 1995 incident and the present investigation, there is no basis to conclude that the omission was intentional or reckless. For these reasons, the Court concludes that defendants have not made the requisite showing with respect to this omission.

4. Defendants next cite the portion of the affidavits relating to surveillance conducted by authorities. Specifically, defendants point to statements that "fixed surveillances, video surveillance, mobile and aerial surveillance" were conducted and that "number physical surveillances" were conducted, and they argue that such statements gave the false impression that surveillance was extensive. Defendants argue that documents obtained in discovery reveal only nine instances of documented surveillance operations, and that no video or aerial surveillance was conducted.

The Court rejects this argument. First, the Court does not find the affidavits to be misleading in this regard. The affidavits were specific with respect to the details of the investigation of the target organization, and viewed in their entirety, the affidavits do not suggest that other unmentioned operations were extensive. For instance, in

setting forth the reasons why the use of traditional investigative techniques was unavailing, the affidavits state that "[t]raffic stops, surveillances, and similar interdiction activities" were conducted on 12 specific dates; thus, the affidavits do not falsely suggest that there were a lot more surveillance operations than the nine documented operations cited by defendants.

In addition, the affidavits explained specifically why surveillance alone could not provide the necessary information about the target organization. For instance, the affidavits noted that the members had become "evasive and unusually cautious in their movements" and that although surveillance could provide some information, it could not provide desired information concerning the scope of the organization. Therefore, defendants have not shown that the wiretap orders would not have issued (thereby making the omission material) if the affidavits had stated that there were only nine documented instances of surveillance.[2] Finally, in light of the detail in the affidavits concerning the investigation that had been conducted, the Court cannot conclude that this omission was intentional or reckless.

5. Finally, defendants complain that the affidavits made reference to "numerous attempts" to conduct trash searches, when in fact such attempts were made only at two addresses. Defendants' primary complaint in this regard appears to be that

---

[2]The Government disputes that no aerial or video surveillance was conducted, and it argues that not all surveillances were documented, but they have not provided evidence to support such arguments.

7

the agents should not have abandoned that technique, but that argument goes toward the necessity determination and does not raise an issue of omission. The affidavits accurately described the attempts to conduct trash searches at the two addresses, in the context of explaining why additional searches would not further and could jeopardize the investigation. Moreover, there is no basis to conclude that any misstatement or omission in this regard was made intentionally or recklessly.

For these reasons, the Court concludes that defendants have failed to make a substantial showing that the affidavits contained any material misrepresentations or omissions made intentionally or recklessly. Accordingly, under the *Franks* standard, defendants are not entitled to an evidentiary hearing on the issue. The Court therefore denies defendants' suppression motions to the extent that they are based on alleged misrepresentations or omissions in the affidavits or the alleged failure of the applicants to provide a full and complete statement regarding necessity.

Thus, the hearing on these motions scheduled for January 31, 2011, will not include evidence or argument relating to compliance with the "full and complete statement" requirement. The Court anticipates that the hearing may include evidence and argument relating to the issue of minimization, as raised in defendants' motions; and argument relating to the issue of necessity, which the parties agree must be decided from the face of the applications and wiretap orders.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motions to suppress wiretap evidence (Doc. ## 351, 361) are **denied** to the extent based on material misrepresentations or omissions in the warrant applications, and defendant Gladstone McDowell's amended motion to suppress (Doc. # 440) is **denied** in its entirety. The scope of the hearing on the remaining issues relating to the motions to suppress shall be as set forth herein.

IT IS SO ORDERED.

Dated this 4th day of January, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
